FILED
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK 2012 OCT -4 AH 8: 37
------------------------------------------------------------------X

JAMES A. D'AMICO,

               U.S. DISTRICT COURT Civil Docket #:
               EASTERN DISTRICT
       Plaintiff,   OF NEW YORK

   -against-              **CV 12- 4953**

                              **COMPLAINT**

THE PORT AUTHORITY OF NEW YORK
AND NEW JERSEY, JOSEPH PAPPALARDO,
*Individually*, DIANE ZALEWSKI, *Individually*,
and FRANK MIROVSKY, *Individually*,

                      **VITALIANO, J.**

       Defendants.
------------------------------------------------------------------X

                  **SCANLON, M.J.**

Plaintiff JAMES A. D'AMICO, by and through his attorneys, PHILLIPS & PHILLIPS,

Attorneys at Law, PLLC, files this Complaint against Defendants, and upon information and

belief, and alleges the following:

1.    Plaintiff brings this action against Defendants for violations of the First Amendment of

    the United States Constitution, Americans with Disabilities Act of 1990, 42 U.S.C. §

    12101, *et seq*. ("ADA"), the New York Civil Service Law Section 75-b ("§75-b"), and

    the New York City Human Rights Law, New York City Administrative Code § 8-502(a),

    *et. seq.* ("NYCHRL"), and seeks damages to redress the injuries Plaintiff has suffered as

    a result of being **Discriminated against due to his perceived disability** and **Retaliated**

    **against for reporting corruption, fraud, theft and overall violations of law** by

    Defendants.

### JURISDICTION

2.    Jurisdiction of this Court is proper under 42 U.S.C. §12101 *et. seq*., and 28 U.S.C. §§

1

1331 and 1343.

3.   The Court has supplemental jurisdiction over the claims of Plaintiff brought under state
     law pursuant to 28 U.S.C. § 1367.

4.   Venue is proper in this District pursuant to 28 U.S.C. §1391(b), as the acts complained of
     occurred within the Eastern District of New York.

## PROCEDURAL PREREQUISITES

5.   Plaintiff filed charges of discrimination upon which this Complaint is based with the
     Equal Employment Opportunities Commission ("EEOC").

6.   Plaintiff received a Notice of Right to Sue from the U.S. Department of Justice, dated
     July 27, 2012, with respect to the herein charges of discrimination.  A copy of the Notice
     is annexed hereto.

7.   This Action is being commenced within 90 days of receipt of said Right to Sue.

## PARTIES

8.   Plaintiff JAMES A. D'AMICO ("D'AMICO") is a resident of the State of New York and
     County of Suffolk.

9.   At all times relevant herein, Defendant THE PORT AUTHORITY OF NEW YORK
     AND NEW JERSEY ("PANYNJ") was and is a bi-state port district that runs through the
     regional transportation infrastructure within the Port of New York and New Jersey, with a
     corporate headquarters located at 225 Park Avenue South, New York, New York 10003.

10.  At all times material and relevant hereto, Defendant PANYNJ possessed a site/field at
     LaGuardia Airport, located at Hangar 7 South, Flushing, New York 11371, wherein the
     majority of the discriminatory conduct took place against Plaintiff D'AMICO.

11. At all times relevant herein, Plaintiff D'AMICO was a "public employee" of Defendants within the meaning of New York State Civil Service Law § 75-b(1)(b).

12. At all times material and relevant hereto, Defendant JOSEPH PAPPALARDO ("PAPPALARDO") was and is a resident of the State of New York.

13. At all times material, Defendant PAPPALARDO was an employee of Defendant PANYNJ as the "Chief Maintenance Supervisor" and was Plaintiff D'AMICO's direct supervisor and/or held supervisory authority over Plaintiff D'AMICO.

14. At all times material and relevant hereto, Defendant FRANK MIROVSKY ("MIROVSKY") was and is a resident of the State of New York.

15. At all times material, Defendant MIROVSKY was an employee of Defendant PANYNJ as the "Manager of Maintenance Services" and was Plaintiff D'AMICO's direct supervisor and/or held supervisory authority over Plaintiff D'AMICO.

16. At all times material and relevant hereto, Defendant DIANE ZALEWSKI ("ZALEWSKI") was and is a resident of the State of New York.

17. At all times material, Defendant ZALEWSKI was an employee of Defendant PANYNJ as the "General Maintenance Supervisor" and was Plaintiff D'AMICO's direct supervisor and/or held supervisory authority over Plaintiff D'AMICO.

18. Upon information and belief, Defendant PANYNJ employs fifteen (15) or more employees as required by the ADA.

19. At all times material and relevant hereto, Defendant PANYNJ was a "public employer" within the meaning of New York State Civil Service Law § 75-b(1)(a).

20. At all times material and relevant hereto, Defendant PANYNJ, Defendant PAPPALARDO, Defendant ZALEWSKI, and Defendant MIROVSKY are jointly

3

referred to as "Defendants."

## MATERIAL FACTS

21. In or about May 1985, Plaintiff D'AMICO commenced employment with Defendant PANYNJ as a summer-hire in the Gardening Department at John F. Kennedy International Airport ("JFKIA").

22. At all times material and relevant hereto, Plaintiff D'AMICO earned approximately $103,000 a year, plus benefits.

23. Throughout Plaintiff D'AMICO's twenty-six (26) year tenure with Defendant PANYNJ, Plaintiff D'AMICO was an exemplary employee, always received compliments for his work performance and got along well with all of his co-workers.

24. In or about 2003, Plaintiff D'AMICO was promoted to a "Maintenance Unit Supervisor" at Defendant PANYNJ's site/field located at LaGuardia Airport, where his responsibilities included the oversight of seven (7) field supervisors, who each handled different craft groups within the structural maintenance field, as well as the management/administration of approximately twenty-seven (27) multi-million dollar material supply and maintenance service contracts for Defendant PANYNJ.

25. Although Plaintiff D'AMICO was stationed at LaGuardia Airport, he was also required to network with his counterparts at other facilities of Defendant PANYNJ, such as in the Procurement Department, Law Department, Risk Management Department, and Treasury Department.

26. Furthermore, on or about May 25, 2010, Plaintiff D'AMICO received a 25th Anniversary letter from the General Manager of LaGuardia Airport stating that his position within the Structural Maintenance Unit was a demanding one, which he approached in a "competent

4

manner."

27. **However, in or about August 2010, this all significantly changed** when Defendants learned that Plaintiff D'AMICO had reported civil and criminal violations being committed by Defendant PAPPALARDO, Defendant MIROVSKY, Ray Fumento, the Maintenance Group Supervisor, and Warren Kroeppel, the Airport Manager, to the Office of Inspector General ("OIG"). Defendants then retaliated against Plaintiff D'AMICO, ultimately resulting in the unlawful termination of his employment.

28. **By way of background**, throughout Plaintiff D'AMICO's employment, he observed numerous instances of unethical and illegal behavior being committed by employees of Defendant PANYNJ, and **in or about November 2009, Plaintiff D'AMICO first complained to Bob Joyce, an investigator with the OIG's New Jersey office, who forwarded the complaint to William Divita, an OIG investigator from their New York office based at JFKIA.** Soon after, Plaintiff D'AMICO met with Mr. Divita and a Port Authority Detective named John Curnyn, who was assigned to assist the OIG, during which Plaintiff D'AMICO complained that granite tile purchased for LaGuardia Airport's Central Terminal building was stolen and installed in the bathrooms, kitchens and entrance hallways of approximately six (6) residential houses owned by Defendant PAPPALARDO, Renato Fumento (Maintenance Group Supervisor), Joseph Catanzaro (Manager of Parking Lot Cleaning Contract and the brother-in-law of Ray Fumento), and Tony D'Alessandro (Supervisor of Parking Lot Cleaning Contract), all of whom were employees of Defendant PANYNJ and members of their Contract Staff.

29. Additionally, Plaintiff D'AMICO complained that Renato Fumento stole lumber purchased for LaGuardia Airport's runway deck undercarriage support system and a

masonry block purchased to form landscape beds along LaGuardia Airport's Air Terminal Highway System and Terminals, and used them to build a retaining wall around his backyard barn.

30. In or about November 2009, Plaintiff D'AMICO also complained about abuse and fabrication of overtime, including signing-in for overtime when not actually present, purposely misclassifying work as emergency aeronautical work so that it "had" to be performed during overtime budget freeze periods, stalling the award of runway de-rubberizing contract so that Defendant PANYNJ's Staff could perform the required work during weekend runway closures on overtime, not allowing the overnight tour supervisor to inspect the runway arrestor beds or expansion joints during his shift so that it could be done during overtime periods before the start of regular work hours, not performing time-sensitive administrative tasks during regular work hours so that they could be done during overtime hours, and stretching the end of storm snow alerts so that some of Defendant PANYNJ's Staff could come in for a few extra shifts for what was termed as "gravy overtime."

31. With respect to Defendant PAPPALARDO, Plaintiff D'AMICO submitted copies of the Maintenance Unit's overtime sign-in sheets and overtime "work reason" sheets to the OIG, showing Defendant PAPPALARDO was violating Defendant PANYNJ's Code of Conduct given that these sheets did not contain Defendant PAPPALARDO's name or any identifying information linked to him, which evidenced that Defendant PAPPALARDO was not working on the days he received overtime compensation. Additionally, Plaintiff D'AMICO reported to the OIG that Ms. Amato was given "cart blanche" to work late to ensure her receipt of the overtime rate to increase her "Final Average Salary" during the

6

years leading up to her retirement.

32. In or about November 2009, Plaintiff D'AMICO further complained to the OIG that Defendants were circumventing the bid process with contractors in exchange for favors/perks. More specifically, Plaintiff D'AMICO reported that Defendant PAPPALARDO circumvented Procurement's bid process for work that was required to go out for advertised bid if it was estimated to exceed $5,000 in value by having Groom Corp. split the invoice into two separately dated $5,000 invoices in exchange for a free lunch. Plaintiff D'AMICO also complained that Defendant PAPPALARDO and Renato Fumento accepted the proposals of Boshung and Overaasen and other snow equipment manufacturers who provided gifts and perks to these individuals in exchange for snow removal equipment contracts with Defendant PANYNJ.

33. At the same time, in or about November 2009, Plaintiff D'AMICO complained that Defendants were reimbursing funds deducted from contractors' invoices for work that had not taken place in exchange for favors, with emphasis on Aero Snow Removal Corp. ("Aero"). Plaintiff D'AMICO explained that he made monetary deductions for equipment that was never utilized and remained parked during snowstorms and were often reimbursed to Aero by Warren Kroeppel, the Manager of LaGuardia Airport in exchange for perks, such as the delivery and operation of Aero equipment at the home of Renato Fumento. In further support of this occurrence, Plaintiff D'AMICO provided the OIG with GPS illustrations and evidence showing that Aero snow equipment remained stagnant during snow storms, Aero snow equipment that went into operation in excess of twelve (12) hours beyond the times they were contractually obligated to remove snow and/or ice from the contracted premises, and Defendant PANYNJ's snow removal

7

equipment and not Aero's equipment was utilized, despite the snow removal contract that was in place with Aero.

34. In or about November 2009, Plaintiff D'AMICO also complained that after the death of a supervisor named Joseph Whittaker, Defendant PAPPALARDO unilaterally and deliberately opened Mr. Whittaker's locker, discovered approximately $30,000 in cash, and proceeded to steal approximately $10,000 from the locker.

35. In or about March 2010, Plaintiff D'AMICO became ill and began to defecate and vomit blood, thus forcing him to take a medical leave of absence until in or about late-May 2010.

36. Unfortunately, only one (1) week after he returned, in or about early June 2010, Plaintiff D'AMICO again began vomiting blood, which prompted Defendant PANYNJ's Medical (hereinafter "PA Medical") to deem him as "Not Fit for Duty."

37. On or about August 3, 2010, Mr. Divita from the OIG requested Plaintiff D'AMICO's presence at a diner called "Jackson Hole" outside of LaGuardia Airport at approximately 9:00 A.M. in order to install a wiretapping device on Plaintiff D'AMICO in advance of his meetings with Ray Fumento and Defendant PAPPALARDO at LaGuardia Airport later that day regarding the stolen tile and lumber from LaGuardia's Airport. However, when Plaintiff D'AMICO entered the parking lot of Jackson Hole, he noticed Defendant PANYNJ's suburban vehicle driven by Ray Fumento parked there.

38. Furthermore, Mr. Fumento and Defendant PAPPALARDO then both suspiciously "clammed up" and did not disclose anything during their meeting, as if they knew that Plaintiff D'AMICO was cooperating with the OIG in an investigation relative to the above-mentioned violations and stolen materials. Upon information and belief, Mr.

8

Fumento witnessed Plaintiff D'AMICO pull into the parking lot of Jackson Hole with the OIG investigators, and as such, immediately began to retaliate against Plaintiff D'AMICO for his disclosures.

39.   **On or around August 27, 2010, Defendants' retaliatory conduct began** when PA Medical at JFKIA called Plaintiff D'AMICO to advise him that his bi-weekly medical visit at their location had been re-directed to Defendant PANYNJ's Office of Medical Services ("OMS") in New York, New York.  When Plaintiff D'AMICO questioned why he would have to travel into Manhattan, Defendants were unable to furnish a response.

40.   In compliance with the above request, on or around September 1, 2010 and September 3, 2010, Plaintiff D'AMICO reported to Defendant PANYNJ's Office of Medical Services "main headquarters" located at 233 Park Avenue South in New York, New York so that they could perform a fitness evaluation on him.  Specifically, Plaintiff D'AMICO met with Dr. Howard Fisher on September 1, 2010 for approximately fifteen (15) minutes and then with Dr. Francine Silver on September 3, 2010 for approximately forty-five (45) minutes.

41.   Interestingly, during Plaintiff D'AMICO's September 1, 2010 visit at the above facility, Dr. Fisher handed him correspondence dated August 20, 2010 from LGA's Maintenance Services Manager, Defendant MIROVSKY, with numerous individuals copied on this letter.  Essentially, said correspondence was riddled with lies about Plaintiff D'AMICO's work performance, lies about Plaintiff D'AMICO's mental health status, personal and private information surrounding Plaintiff D'AMICO's divorce, and personal and private information concerning Plaintiff D'AMICO's children.  Plaintiff D'AMICO found this correspondence to be immensely invasive, private and was clearly retaliatory in nature

given that it was mainly written to discredit Plaintiff D'AMICO.

42. Thereafter, on or about September 2, 2010, Plaintiff D'AMICO sent an email to Defendant MIROVSKY in which he alleged that he was being retaliated against for his disclosures, as up until Defendants learned that Plaintiff D'AMICO was cooperating with the OIG, Plaintiff D'AMICO had always been permitted to fax a copy of the Medical Disposition Form that was handed to him after a routine medical visit to his supervisor, Defendant PAPPALARDO. However, since Defendants discovered, in particular Defendant PAPPALARDO, that Plaintiff D'AMICO was cooperating with the OIG in the above mentioned investigation, Defendant PAPPALARDO and Defendant ZALEWSKI suspiciously ordered Plaintiff D'AMICO to drop these disposition slips in person. As Plaintiff D'AMICO found this new requirement to be overly burdensome and grossly unreasonable, he asked Defendant MIROVSKY, who was Defendant PAPPALARDO's immediate supervisor, if he could drive into LGA the next morning to drop off the disposition slip. In response to said request, Defendant MIROVSKY remarked: "Sorry, but policy is policy."

43. Thereafter, **on or about September 3, 2010, Plaintiff D'AMICO met with Ms. Desire of Defendant PANYNJ's Equal Employment Opportunity ("EEO") Office** to lodge complaints regarding Defendants' obvious retaliation, explaining that he was forced to drive approximately seventy (70) miles back to LGA after de-boarding the LIRR train in Bellport, Long Island to hang a disposition slip on Defendant PAPPALARDO's door, devoid of any justifiable or compelling reasons.

44. Following his visit to Defendant PANYNJ's EEO Office, Plaintiff D'AMICO engaged in continuous communications via email with them. However, despite Plaintiff

D'AMICO's efforts to seek assistance and guidance from members of Defendant PANYNJ's EEO Office, Defendants were non-responsive to his complaints, and the retaliation was allowed to continue.

45.    On or about September 7, 2010, Chief Medical Officer Dr. Fisher sent a letter to Defendant MIROVSKY in which he arbitrarily stated that, **"It has been determined by this office that James D'Amico is not fit for duty at this time."** However, this was completely false and clearly retaliatory. While Plaintiff D'AMICO was actually ready and able to return to work, Defendants refused to allow him to do so, and refused to even permit Plaintiff D'AMICO to seek a second and/or independent medical opinion regarding his overall mental and physical fitness in order to return to his position with Defendant PANYNJ.

46.    On or about November 10, 2010, Michael Saio, a former employee of Defendant PANYNJ, called Plaintiff D'AMICO to inform him that various employees, supervisors and managers of **Defendant PANYNJ had labeled, and were calling, Plaintiff D'AMICO a "rat" for cooperating with the OIG.**

47.    For the following six (6) months, although Plaintiff D'AMICO continued to regularly attempt to return to work, Defendants nonetheless continued to arbitrarily label Plaintiff D'AMICO as "not fit for duty," solely as a way to set Plaintiff D'AMICO up for termination in retaliation for complaining about the aforementioned violations of law.

48.    On or about May 18, 2011, Plaintiff D'AMICO received a letter, dated April 29, 2011, from Dr. Howard Fisher at Defendant PANYNJ's Office of Medical Services to the newly appointed LGA General Manager, Thomas Bosco, stating that Plaintiff D'AMICO was no longer medically able to perform the duties of a Maintenance Unit Supervisor and

that Plaintiff D'AMICO would be contacted within ten (10) business days by Defendant PANYNJ's Human Resources Department to explore alternate placement within the agency.

49. However, Defendant PANYNJ's Human Resources Department never contacted Plaintiff D'AMICO, and when Plaintiff D'AMICO tried contacting a Human Resource representative, he was told to "be patient" or given numbers to call that resulted in him leaving numerous voicemail messages that were never returned.

50. Further, on or about September 1, 2011, Plaintiff D'AMICO received a letter from Richard D. Williams, Assistant General Counsel of Defendant PANYNJ's Employee Relations, in which Mr. Williams afforded Plaintiff D'AMICO the opportunity to rebut the decision made by the Office of Medical Services back in April of 2011 regarding his mental and physical fitness before an impartial arbitrator. However, after much contemplation, Plaintiff D'AMICO chose not to request such a hearing because he had lost all faith in Defendant PANYNJ's process and procedures and did not believe that the arbitrator would be impartial.

51. **Then, on or about October 12, 2011, without any warning, Plaintiff D'AMICO received a letter from the Director of Human Resources advising him that his employment had been terminated**.

52. On or about October 21, 2011, Plaintiff D'AMICO received a phone call from Defendant PAPPALARDO requesting his presence at LaGuardia Airport within one (1) week to remove his personal belongings.

53. On or about October 26, 2011 at approximately 10:15 am, after arriving at the LGA Structural Maintenance Office, Defendant PAPPALARDO and Defendant ZALEWSKI

12

60. Plaintiff D'AMICO's performance was, upon information and belief, above average during the course of his employment with Defendants.

61. Plaintiff D'AMICO has been unlawfully discriminated against, retaliated against, humiliated, and degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

62. **Defendants' actions and conduct were intentional and intended to harm Plaintiff D'AMICO**.

63. As a result of Defendants' actions, Plaintiff D'AMICO feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

64. As a result of the Defendants' discriminatory treatment of Plaintiff D'AMICO, he has suffered severe emotional distress and physical ailments.

65. As a result of the acts and conduct complained of herein, Plaintiff D'AMICO has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff D'AMICO has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff D'AMICO further experienced severe emotional and physical distress.

66. As a result of the above, Plaintiff D'AMICO has been damaged in an amount in excess of the jurisdiction of the Court.

67. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff D'AMICO demands Punitive Damages as against all Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE AMERICANS WITH DISABILITIES ACT
### (Not Against Individual Defendants)

68.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

69.     Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

70.     Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

71.     Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his perceived disability.

72.     As such, Plaintiff has been damaged as set forth herein.

## AS A SECOND CAUSE OF ACTION FOR RETALIATION
## UNDER THE AMERICANS WITH DISABILITIES ACT
### (Not Against Individual Defendants)

73.     Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

74.     The ADA prohibits retaliation, interference, coercion, or intimidation.

75.     42 U.S.C. § 12203 provides:

   a)     Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any

15

manner in an investigation, proceeding, or hearing under this chapter.

b) Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

76. Defendants violated this section as set forth herein.

## AS A THIRD CAUSE OF ACTION FOR VIOLATION OF
## THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

77. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

78. The First Amendment of the United States Constitution states: Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances. USCS Const. Amend. 1

79. Defendants violated the above section as set forth herein given that Plaintiff was an employee who engaged in protected speech, suffered an adverse employment action in the form of unlawful termination, and speech at issue, the above complaints and reports regarding violations of law, were a substantial or motivating factor in the adverse employment action.

80. Defendant PANYNJ is a state actor for the purposes of 42 U.S.C. § 1983.

81. The numerous complaints are deemed expression protected by the First Amendment.

82. Defendant PANYNJ denied Plaintiff the right to express himself when Defendant PANYNJ retaliated against Plaintiff.

83. Defendant PANYNJ violated Plaintiff's right to free speech guaranteed by the First

Amendment of the United States' Constitution.

## AS A FOURTH CAUSE OF ACTION FOR VIOLATION OF
## NEW YORK CIVIL SERVICE LAW §75-b

84. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

85. This cause of action is for a violation of the New York Civil Service Law §75-b and/or unlawful retaliatory action against Defendants.

86. Plaintiff is a protected whistleblower who was retaliated against and punished for speaking out against violations of law.

87. New York Civil Service Law §75-b states that, "a public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a government body information: … (ii) which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action."

88. Defendants retaliated against Plaintiff in the terms and conditions of his employment in violation of New York Civil Service Law §75-b.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

89. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

90. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital

17

status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

91. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of his disability and/or perceived disability.

## AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

92. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

93. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

94. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

95. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

96. The New York City Administrative Code Title 8, §8-107(7) provides that it shall be

unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

97. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS AN EIGHTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

98. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

99. New York City Administrative Code Title 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

100. Defendants violated the section cited herein as set forth.

## AS A NINTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

101. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

102. New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

   a. An employer shall be liable for an unlawful discriminatory practice based upon

19

the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

    1.   the employee or agent exercised managerial or supervisory responsibility; or

    2.   the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

    3.   the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

103.   Defendants violated the section cited herein as set forth.

## JURY DEMAND

104.    Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiffs respectfully request a judgment against the Defendants:

A.  Declaring that the Defendants engaged in unlawful employment practices prohibited by the Americans with Disabilities Act of 1990, the First Amendment of the United States Constitution, the New York Civil Service Law § 75-b, and the New York City Human Rights Law, in that Defendants unlawfully discriminated against Plaintiff because of his disability and/or perceived disability, and unlawfully retaliated against Plaintiff for complaining of violations of law;

B.  Awarding damages to Plaintiff for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful employment practices, and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in an amount in excess of the jurisdiction of all lower courts;

D.  Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
      September 24, 2012

                                     **PHILLIPS & PHILLIPS**
                                       **ATTORNEYS AT LAW, PLLC**

                                       Marjorie Mesidor, Esq. (MM9936)
                                       *Attorneys for Plaintiff*
                                       30 Broad Street, 35th Floor
                                       New York, NY 10004
                                       (212) 248-7431



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
5068 2569

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4239*
*Washington, DC 20530*

July 27, 2012

Mr. James A. D'Amico
c/o Jessenia Maldonado, Esquire
Law Offices of Phillips & Phillips
Attorneys at Law
30 Broad Street, 35th Fl.
New York, NY 10004

Re:  EEOC Charge Against Port Authority of New York & New Jersey, et al.
     No. 520201200774

Dear Mr. D'Amico:

     Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since the date
the Commission assumed jurisdiction over the charge, and no suit based
thereon has been filed by this Department, and because you through your
attorney have specifically requested this Notice, you are hereby notified
that you have the right to institute a civil action against the above-
named respondent under:
     Title I of the Americans with Disabilities Act of 1990,
     42 U.S.C. 12111, et seq., and,
     Title V, Section 503 of the Act, 42 U.S.C. 12203.

     If you choose to commence a civil action, such suit must be filed in
the appropriate Court within 90 days of your receipt of this Notice.

     The investigative file pertaining to your case is located in the EEOC
New York District Office, New York, NY.

     This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is meritorious.

                              Sincerely,

                              Thomas E. Perez
                              Assistant Attorney General
                              Civil Rights Division

                         by  Karen J. Ferguson

                              Karen L. Ferguson
                         Supervisory Civil Rights Analyst
                         Employment Litigation Section

cc: New York District Office, EEOC
    Port Authority of New York & New Jersey, et al.